UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINCARE, INC.,

    Plaintiff,                                    Case No: 8:20-cv-01002-WFJ-AAS

vs.

ESTHER D. TINKLENBERG

    Defendant.

_____/

# DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

**NOW COMES**, Defendant, ESTHER D. TINKLENBERG. ("TINKLENBERG"), through her undersigned counsel, and hereby responds to Plaintiff's Verified Complaint as follows:

1. This is an action to enforce Lincare's contractual rights pursuant to its Key Employee Confidentiality and Restrictive Covenant Agreement with Tinklenberg. In 2013, Lincare entered into the Key Employee Agreement with Tinklenberg and paid her significant lump-sum compensation in connection with the Agreement, in addition to her substantial salary for her continued employment with Lincare. In exchange, Tinklenberg agreed to observe certain confidentiality obligations and promised that for an 18-month period after leaving Lincare she would not work for a business competitive with Lincare's business. A copy of the Key Employee Agreement is attached as **Exhibit 1**.

**ANSWER:** **Defendant admits that Plaintiff has brought forth this action and that the Agreement speaks for itself; however, Defendant denies the remaining allegations in paragraph 1.**

2.	After working for Lincare for more than twenty-two (22) years, including for seven years after signing the Key Employee Agreement, and learning intimate details about Lincare's customers, referral sources, pricing and product strategies and competitive positioning, Tinklenberg abruptly quit her high-level position with Lincare and immediately went to work for Thrive Pediatric Skilled Care, LLC, a direct competitor engaged in the same line of business as Lincare.

**ANSWER:  Defendant admits that she was formerly employed by Lincare and is now employed by Thrive Pediatric Skilled Care, LLC.  Defendant denies the remaining allegations in paragraph 2.**

3.	By this action, Lincare seeks an injunction enforcing its contractual rights, including the non-compete provisions of the Key Employee Agreement and damages.

**ANSWER:  Defendant admits that Plaintiff has brought this action but denies the remaining allegations of paragraph 3.**

## Jurisdiction and Venue

4.	Lincare is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Pinellas County, Florida.

**ANSWER:  Defendant is without specific knowledge and therefore denies the allegations in paragraph 4.**

5.	Tinklenberg is a citizen and resident of Texas.

**ANSWER:  Admitted for jurisdictional purposes only; otherwise denied.**

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER: Admitted for jurisdictional purposes only; otherwise denied.**

7. This Court has personal jurisdiction over Tinklenberg because, in accepting the compensation and benefits provided to her pursuant to the Key Employee Agreement, Tinklenberg agreed and consented that jurisdiction and venue for any claim brought for breach of the Key Employee Agreement would lie in "any state or federal court situated in Pinellas or Hillsborough County, Florida." *See* **Exhibit 1**, at p. 4. Tinklenberg also entered into the contract with Lincare, located in Pinellas County, provided services to Lincare, received compensation from Lincare, had regular communications with Lincare personnel, and traveled to and attended numerous meetings at Lincare's offices in Pinellas County, Florida.

**ANSWER: Defendant does not challenge the jurisdiction of this Court. Defendant denies the allegations of paragraph 7 as worded.**

## General Allegations

8. Lincare is a leading provider of respiratory care, enteral and parenteral care, durable medical equipment, and other health care services delivered to patients in their homes or residential facilities. Lincare operates nationwide through hundreds of locations and its employees interact with thousands of customers and referral sources. Lincare's referral sources include physicians and other health care providers who treat patients needing Lincare's products and services.

**ANSWER: Defendant admits that Lincare provides health care services throughout the country. Defendant otherwise denies the allegations in paragraph 8.**

9. Tinklenberg was first employed by Lincare in 1998 and her employment was continuous until her voluntary resignation in April 2020. Over many years, Tinklenberg was trained and promoted through a series of roles, with increasing responsibilities, within Lincare. For example, in 2009 Lincare promoted Tinklenberg to a Division Manager position within its Pediatric division. In 2013, Lincare promoted Tinklenberg to a Region Manager position, leading its Pediatric division.

**ANSWER:** **Defendant admits that she worked for Lincare in various roles from 1998 through 2020. Defendant otherwise denies the allegations in paragraph 9.**

10. In 2012 and 2013, Lincare went through a corporate acquisition process which prompted the company to identify certain employees it considered "Key," and to offer such employees additional compensation if they continued their employment with Lincare. Tinklenberg was one such Key Employee identified, and Tinklenberg and Lincare entered into the Key Employee Agreement dated March 20, 2013. As consideration for entering into the Key Employee Agreement, Tinklenberg was provided a lump-sum payment of $102,752.00, in addition to continued employment, with substantial salary and bonus compensation. *See* **Exhibit 1**, at p. 1.

**ANSWER:** **Defendant admits that she executed the Key Employment Agreement. Defendant denies the remaining allegations in paragraph 10.**

11. Since 2016, Tinklenberg has had primary responsibility for developing and promoting Lincare's enteral business. Enteral refers to the administration of food or drugs to a patient by various means through the gastrointestinal tract. Enteral products and services are considered a distinct line of business within Lincare, alongside other lines of business such as respiratory care and durable medical equipment. Tinklenberg was the lead person in charge

of Lincare's enteral business, and her responsibilities were nationwide. Tinklenberg held the title of Region Manager, one of fewer than twenty Region Managers within Lincare, and she reported directly to Steve Bower, Lincare's Region Vice President, one of only four Region Vice Presidents.

**ANSWER:** **Defendant admits that she held the title of Region Manager and for a period of her employment worked in Lincare's enteral business. Defendant admits that her last direct report was Steve Bower. Defendant denies the remaining allegations in paragraph 11.**

12. Throughout Tinklenberg's twenty-two (22) years of employment with Lincare, the company provided Tinklenberg with specialized and extraordinary training, and with access to Lincare's trade secrets and other proprietary business information. For example, Tinklenberg was provided with unfettered access to Lincare's proprietary CPR Plus system, a specialized database containing detailed, confidential business information concerning Lincare's customers, referral sources, and suppliers. Lincare's CPR Plus system contains valuable proprietary information not available to competitors or to the general public, and over which Lincare maintains strict confidentiality. Lincare also provided Tinklenberg with information and training only made available to its high-level Region Managers.

**ANSWER:** **Defendant admits it was employed by Plaintiff but otherwise denies the allegations of paragraph 12.**

13. Additionally, Tinklenberg was provided with access to other information confidential and proprietary to Lincare, such as pricing, cost, expense, revenue, income, and other financial information relating to Lincare, its customers, referral sources, and suppliers. Further, Lincare provided Tinklenberg with other non-public business information relating to

current or potential customers, referral sources, suppliers, contact persons and personnel, as well as research, data analysis, business strategies, plans, and methods developed and utilized by Lincare which have not been publicly disclosed by Lincare, are not readily ascertainable by proper means, and the disclosure of which would provide a competitor a substantial advantage.

**ANSWER:** **Defendant admits it was employed by Plaintiff and had access to certain of Plaintiff's information. Defendant otherwise denies the allegations of paragraph 13.**

14. Lincare's proprietary business information and specialized training are the result of substantial expense and investment on the part of Lincare, and would only have been provided and disclosed to Tinklenberg based on the firm understanding and agreement that Tinklenberg would not use that information to gain an unfair competitive advantage for companies or individuals in competition with Lincare.

**ANSWER:** **Defendant denies the allegations of paragraph 14.**

15. The Key Employee Agreement contains, among other things, non-competition, non-solicitation, and confidentiality provisions. Specifically, in Section 2 of the Agreement Tinklenberg agreed that for a period of eighteen (18) months following the date of her separation from employment with Lincare, Tinklenberg would not, directly or indirectly:

> … participate in, engage in, or attempt to engage or participate in, or assist any other person with engaging or participating in, any Prohibited Businesses anywhere within the state or states in which [Tinklenberg] had management, sales, marketing or clinical responsibilities during the 2-year period immediately prior to [Tinklenberg's] cessation of employment with Lincare.

*See* **Exhibit 1**, at Section 2(a).

**ANSWER:** **Defendant admits that the Agreement speaks for itself but otherwise denies the allegations of paragraph 15.**

16. In Section 2(b) of the Key Employee Agreement, the term "Prohibited Businesses" is defined as follows:

> For purposes of this Agreement, (i) "Prohibited Businesses" mean any business activity similar to those engaged in by any of the Lincare Entities during [Tinklenberg's] employment with Lincare and during the Restriction Period, such businesses including, without limitation, the business of marketing, advertising, selling, leasing, renting, distributing or otherwise providing oxygen, oxygen equipment, aerosol inhalation therapy equipment and respiratory medications, infusion and pain management, **enteral and parenteral**, PT/INR monitoring or testing, personal emergency response system monitoring, nasal continuous positive airway pressure devices, infant monitoring equipment and services, home sleep studies-related therapy equipment, and other respiratory therapy and durable medical equipment, products, supplies and services to customers in their homes or other alternative site care facilities.

*See* **Exhibit 1**, at Section 2(b) (emphasis added).

**ANSWER:** **Defendant admits that the Agreement speaks for itself but otherwise denies the allegations of paragraph 16.**

17. Section 2(c) of the Key Employee Agreement contains specific non-solicitation restrictions, prohibiting Tinklenberg from inducing or attempting to induce Lincare employees, customers, suppliers, and referral sources from terminating their business relationships with Lincare during the 18-month Restriction Period following the end of her employment with Lincare. *See* **Exhibit 1**, at Section 2(c).

**ANSWER:** **Defendant admits that the Agreement speaks for itself but otherwise denies the allegations of paragraph 17.**

18. Section 3 of the Key Employee Agreement provides specific confidentiality and non-disclosure provisions, as follows:

> [Tinklenberg] acknowledges that [Tinklenberg] has had access to Confidential Information with respect to Lincare and other Lincare Entities. For purposes of this Agreement, "Confidential Information" includes, but is not limited to, all information of or relating to any of the Lincare Entities (including, but not limited to, past, present or prospective market, sales, product, customer and referral source information, prices and pricing structure, contractual arrangements, company practices, policies and procedures, product and process knowledge, cost and supplier information, personnel data, and any strategy or plans related to any of the foregoing) which is not generally available or disclosed to the public by the Lincare Entities. [Tinklenberg] acknowledges that all such information is a valuable and unique asset and constitutes confidential and/or proprietary information and trade secret information of the Lincare Entities, and [Tinklenberg] shall (i) keep such information confidential; (ii) use such information solely for the purpose of performing [Tinklenberg's] obligations as an employee of Lincare; and (iii) not otherwise disclose or make use of such information during the term of [Tinklenberg's] employment with Lincare for any reason whatever or for no reason.

*See* **Exhibit 1**, at Section 3(a).

**ANSWER: Defendant admits that the Agreement speaks for itself but otherwise denies the allegations of paragraph 18.**

19. In addition to continuing to pay Tinklenberg's substantial salary and bonus compensation during her continued employment, Lincare paid Tinklenberg lump-sum compensation of $102,752.00 in connection with the parties' execution of the Key Employee Agreement. *See* **Exhibit 1**, at Section 1.

**ANSWER: Defendant admits that during her employment with Plaintiff she received compensation but otherwise denies the allegations of paragraph 19.**

20. Tinklenberg also expressly agreed that the scope and duration of the restrictive covenants in the Key Employee Agreement were reasonable, and that preliminary and

permanent injunctive relief would be appropriate remedies for any breach. *See* **Exhibit 1**, at Sections 4(b) and 4(c). In addition, Tinklenberg agreed to indemnify Lincare for its legal fees and expenses incurred in connection with any breach on her part. *See* **Exhibit 1**, at Section 4(d).

**ANSWER: Defendant admits that the Agreement speaks for itself but otherwise denies the allegations of paragraph 20.**

21. During her employment with Lincare, Tinklenberg supervised Lincare's sales personnel, and managed all aspects of Lincare's enteral and parenteral services business nationwide. Tinklenberg's job duties included developing business for Lincare by, among other things, continuously developing and maintaining close relationships with Lincare's customers, referral sources, and suppliers. Accordingly, Tinklenberg developed and maintained close relationships with numerous customers and referral sources who recommend Lincare's products and services to their patients. Tinklenberg also became intimately familiar with Lincare's business operations, contractual arrangements, and with the particular needs of Lincare's customers.

**ANSWER: Defendant admits that she worked in Plaintiff's enteral and parenteral services business but denies the remaining allegations in paragraph 21.**

22. Thrive Skilled Pediatric Care, LLC provides the same types of enteral and parenteral products and services that Lincare provides, and competes with Lincare for business with the same customers and referral sources. Thrive focuses on the same Pediatric customers and referral sources with whom Tinklenberg was engaged and developed relationships with for the majority of her twenty-two (22) years with Lincare. Thrive also engages in the business of providing pediatric vents and durable medical equipment, the same as Lincare. According to

her LinkedIn profile, Tinklenberg has taken the position of Chief Operating Officer with Thrive Skilled Pediatric Care, LLC.

**ANSWER: Defendant admits that Lincare provided some types of enteral products. Defendant admits that she is currently the Chief Operating Officer with Thrive Skilled Pediatric Care, LLC. Defendant denies the remaining allegations in paragraph 22.**

23. Upon learning that Tinklenberg accepted employment with Thrive Skilled Pediatric Care, LLC, Lincare immediately demanded that Tinklenberg abide by the terms of her Key Employee Agreement. Tinklenberg has refused to comply with Lincare's demand.

**ANSWER: Defendant denies the allegations of paragraph 23.**

24. Upon information and belief, Tinklenberg is now performing services for her new employer that are in direct conflict with her Agreement and include services that are substantially the same, if not identical to those she performed for Lincare. Tinklenberg is intentionally using, directly or indirectly, the knowledge, skill, training, and information obtained from Lincare for her own benefit and for the benefit of Thrive Skilled Pediatric Care, LLC. Tinklenberg's employment by Thrive and her use of Lincare's confidential and proprietary business information is in direct violation of her contractual duties, unfairly competing with Lincare, and taking advantage of and interfering with the customer and referral source relationships that were developed while she was employed by Lincare.

**ANSWER: Defendant denies the allegations in paragraph 24.**

## COUNT I - BREACH OF CONTRACT

25. Lincare realleges and incorporates the general allegations above.

**ANSWER:** **Defendant adopts and re-asserts the responses and allegations above as if fully set forth herein.**

26. Lincare and Tinklenberg have a valid and enforceable contract, the Key Employee Agreement attached as **Exhibit 1**.

**ANSWER:** **Defendant denies the allegations of paragraph 26.**

27. Lincare has performed its obligations under the contract.

**ANSWER:** **Defendant denies the allegations in paragraph 27.**

28. Tinklenberg is in present, material breach of the parties' contract because she is working for Thrive Pediatric Skilled Care, LLC, which is engaged in the same line of business as Lincare.

**ANSWER:** **Defendant denies the allegations in paragraph 28.**

29. As Tinklenberg expressly acknowledged, money damages are an inadequate remedy for breach of the parties' contract.

**ANSWER:** **Defendant denies the allegations in paragraph 29.**

30. If not enjoined, Tinklenberg will continue to violate her contractual obligations to Lincare and will continue to cause damage to Lincare's business and corporate goodwill.

**ANSWER:** **Defendant denies the allegations in paragraph 30.**

### COUNT II - MISAPPROPRIATION OF TRADE SECRETS

31. Lincare realleges and incorporates the general allegations above.

**ANSWER:** **Defendant adopts and re-asserts the responses and allegations above as if fully set forth herein.**

32. The confidential and proprietary information of Lincare, as detailed herein, constitutes trade secrets belonging to Lincare within the meaning of the Florida Uniform Trade Secrets Act, § 688.001, *et seq*., Florida Statutes.

**ANSWER:** **Defendant denies the allegations in paragraph 32.**

33. Lincare's trade secrets derive independent economic value from being not generally known to, and not readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, as defined by § 688.002(4)(a), Florida Statutes.

**ANSWER:** **Defendant denies the allegations in paragraph 33.**

34. Lincare has taken reasonable efforts to maintain the secrecy of its trade secrets and confidential information, including but not limited to obtaining Tinklenberg's contractual promise to observe her confidentiality obligations under the Key Employee Agreement attached as **Exhibit 1**.

**ANSWER:** **Defendant denies the allegations in paragraph 34.**

35. Tinklenberg had access to, and, on information and belief, obtained and continues to possess, Lincare's confidential information and trade secrets, including but not limited to pricing, cost, expense, revenue, income, and other financial information relating to Lincare, its customers, referral sources, and suppliers, and specific non-public business information relating to current or potential customers, referral sources, suppliers, contact persons and personnel, as well as research, data analysis, business plans and methods developed and utilized by Lincare which has not been publicly disclosed by Lincare and is not readily ascertainable by proper means.

**ANSWER:** **Defendant admits she had access to Lincare information while employed at Lincare. Defendant denies the remaining allegations in paragraph 35.**

36. Tinklenberg was aware of her obligations to maintain the confidentiality of Lincare's trade secrets and confidential business information.

**ANSWER:** **Defendant was aware of certain obligations but denies the remaining allegations of paragraph 36.**

37. On information and belief, Tinklenberg, in violation of the Florida Uniform Trade Secrets Act, has taken and made use of Lincare's confidential information and trade secrets for her personal benefit and for the benefit of her new employer, Thrive Skilled Pediatric Care, LLC, and to Lincare's detriment.

**ANSWER:** **Defendant denies the allegations in paragraph 37.**

38. Tinklenberg's violations have been willful and malicious within the meaning of the Florida Uniform Trade Secrets Act.

**ANSWER:** **Defendant denies the allegations in paragraph 38.**

39. Lincare's competitive advantage in the marketplace is critically dependent on Lincare's ability to maintain the confidentiality of its trade secrets. Lincare has been irreparably harmed and will continue to be irreparably harmed by Tinklenberg's misappropriation of its trade secrets.

**ANSWER:** **Defendant denies the allegations in paragraph 39.**

40. If not enjoined, Tinklenberg will continue to misappropriate and use Lincare's trade secrets for her benefit and the benefit of her new employer, and to Lincare's detriment.

**ANSWER:** **Defendant denies the allegations in paragraph 40.**

41. Lincare seeks to enjoin Tinklenberg, and all persons acting in concert or participation with her, from using or disclosing trade secrets of Lincare, and seeks to recover damages for actual loss caused by the misappropriation of Lincare's trade secrets, for any unjust enrichment caused by the misappropriation of Lincare's trade secrets that are not addressed in computing damages for actual loss, for exemplary damages for willful and malicious misappropriation of trade secrets, and for attorney's fees, court costs, and other remedies to the fullest extent permissible under applicable law.

**ANSWER: Defendant admits that Plaintiff has brought this action but denies Plaintiff has a colorable claim and all other allegations contained in paragraph 41.**

42. Tinklenberg's acts are irreparably harming Lincare because disclosure and use of Lincare's confidential business information can destroy Lincare's business and goodwill.

**ANSWER: Defendant denies the allegations in paragraph 42.**

**COUNT III – PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

43. Lincare realleges and incorporates the general allegations above.

**ANSWER: Defendant adopts and re-asserts the responses and allegations above as if fully set forth herein.**

44. Lincare, in an effort to mitigate its damages and preserve the status quo before final adjudication of this matter, seeks this Court's order enjoining Tinklenberg, and those acting in concert with her, from violating the terms of the Key Employee Agreement.

**ANSWER: Defendant admits that Plaintiff has brought this action but denies Plaintiff has a colorable claim and all other allegations contained in paragraph 44.**

45. Lincare is entitled to the entry of a preliminary injunction against Tinklenberg because Lincare can demonstrate: (1) a substantial likelihood of success on the merits; (2) a

substantial threat that failure to grant the injunctive relief will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction may cause the opposing party; and (4) the injunction will not disserve the public interest. There is no adequate remedy at law to prevent Tinklenberg's wrongful conduct, unless Tinklenberg is enjoined from continuing her wrongful conduct.

**ANSWER:** **Defendant denies the allegations in paragraph 45.**

46. There is a substantial likelihood that Lincare will prevail on the merits of this action.

**ANSWER:** **Defendant denies the allegations in paragraph 46.**

47. Lincare has suffered and will continue to suffer irreparable injury if injunctive relief is not granted, and the actual and threatened injury to Lincare outweighs any potential injury to Tinklenberg, who has no legal right or justification to breach the Key Employee Agreement, or to misappropriate Lincare' trade secrets.

**ANSWER:** **Defendant denies the allegations in paragraph 47.**

48. The granting of injunctive relief will serve the public interest in enforcing the contractual rights of parties, and in limiting the extent of damages Lincare will incur as a result of Tinklenberg's actions.

**ANSWER:** **Defendant denies the allegations in paragraph 48.**

## GENERAL DENIAL

The Defendants deny all allegations not expressly and explicitly admitted herein. The Defendants further deny any allegation that can be inferred from the section headings of the Plaintiffs Complaint or Wherefore Clauses, including all prayers for relief therein.

## A'ITORNEYS' FEES

The Defendant has retained the services of the undersigned counsel to represent her in connection with this action and is obligated to pay them a reasonable fee. Pursuant to sections 542.335 and 688.002, Florida Statutes and the terms of the agreement at issue in this case, Plaintiff is obligated to pay same, and the Defendants intend to seek recovery of their reasonable attorneys' fees and costs incurred in connection with this action.

## FIRST AFFIRMATIVE DEFENSE

Count I of Plaintiffs Complaint is barred and fails to state a claim upon which relief can be granted because the Plaintiff cannot establish the existence of one or more legitimate business interests justifying the restrictive covenants sued upon by the Plaintiff. In Florida, "[g]enerally three such interests are recognized: (1) trade secrets and confidential business lists, records, and information, (2) customer goodwill, and (3) to a limited degree, extraordinary or specialized training provided by the employer." *Hapney v. Cent Garage, Inc*. 579 So.2d 127, 131 (Fla. 2d DCA 1991) (disapproved of on other grounds by *Gupton v. Vill Key & Saw Shop, Inc*. 656 So.2d 475 (Fla. 1995). The Plaintiff did not provide the Defendants with any training, let alone "specialized and extraordinary" training. Therefore, the Plaintiff does not have a legitimate business interest to justify the restrictive covenants it has sued upon. Rather, the Plaintiff is attempting to enforce restrictive covenants for no other reason than to eliminate competition *per se* in contravention of Florida law. See *Hapney*, 579 So.2d 131.

## SECOND AFFIRMATIVE DEFENSE

Counts III of the Plaintiffs Complaint is barred and fails to state a claim upon which relief can be granted, because assuming arguendo that Plaintiff could establish that it will suffer irreparable harm as a consequence of the Defendants alleged actions, which the Defendants

deny, the Plaintiff has an adequate legal remedy available to address the harm it has purportedly suffered.

## THIRD AFFIRMATIVE DEFENSE

Counts I and III of the Plaintiffs Complaint are barred and fail to state a claim upon which relief can be granted because, assuming arguendo that the Plaintiff could establish that it had a legitimate business interest to protect, which the Defendants deny, the restrictive covenants sued upon by the Plaintiff are not reasonably necessary to protect those business interests as they are contrary to public policy and are unreasonable in time, area and scope.

## FOURTH AFFIRMATIVE DEFENSE

Count III failes to state a claim upon which relief can be granted as a Preliminary or a Permanent Injunction is relief that can be obtained by a Court of law not an independent cause of action.

## FIFTH AFFIRMATIVE DEFENSE

Counts I, II, and III, of the Plaintiffs Complaint are barred and fail to state a claim upon which relief can be granted because Plaintiff has failed to allege sufficient facts to demonstrate that the alleged actions of the Defendants were the direct or proximate cause of any actual damages to the Plaintiff.

## SIXTH AFFIRMATIVE DEFENSE

To the extent that the Plaintiff suffered any damages as a result of the facts or claims alleged in its Complaint, which the Defendants deny, the Plaintiff has failed to adequately and reasonably mitigate or minimize its damages. As such, the Plaintiff is not entitled to recover the amount of damages alleged or any damages at all.

**SEVENTH AFFIRMATIVE DEFENSE**

Counts I, II, and III of the Plaintiff's Complaint are barred and fail to state a claim upon which relief may be granted because Plaintiff has failed to consistently enforce similar restrictions and agreements with other employees and former employees. As a result, Plaintiff is unable to demonstrate that the restrictive covenants sought to be enforced against the Defendant are reasonably necessary to protect a legitimate business interest of Plaintiff, or such legitimate business interest has been waived by Plaintiff.

**EIGHTH AFFIRMATIVE DEFENSE**

Counts I, II and III of the Plaintiffs Complaint are barred and fail to state a claim upon which relief may be granted to the extent that Plaintiff failed to fully perform its obligations pursuant to Defendant's, which relieved Defendant from any obligation to perform under the Non-Compete. For example, Plaintiff failed to properly and fully compensate Defendant pursuant to the terms of her employment.

**NINTH AFFIRMATIVE DEFENSE**

Defendant asserts that the Agreement is overbroad as and therefore constitutes an illegal restriction on business and is void.

The Defendants reserve the right to amend their affirmative defenses after they have had the opportunity to conduct discovery into the nature of Plaintiffs claims.

WHEREFORE, Esther D. Tinklenberg hereby demands judgment in her favor. Esther D. Tinklenberg further seeks an award of its attorney's fees and expenses pursuant to the Key Employee Agreement, section 542.335, Florida Statutes, and section 688,002, Florida Statutes and any further relief deemed proper by the Court.

Respectfully submitted this 22nd day of May, 2020.

                            ESTHER D. TINKLENBERG

                            */s/ Jeffrey W. Gibson*
                        **Jeffrey W. Gibson, Esq.**
                        Florida Bar Number: 568074
                        **Thomas R. Farrior, Esq.**
                        Florida Bar Number: 111965
                        Primary email:       jg@macfar.com
                        trf@macfar.com
                        Secondary email:    ala@macfar.com
                        gmt@macfar.com

                        **MACFARLANE FERGUSON & MCMULLEN**
                        201 N. Franklin Street, Suite 2000
                        Tampa, Florida 33602
                        Telephone:    813-273-4200
                        Fax:             813-273-4396
                        Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been furnished via email and CM/ECF to John D. Mullen, Esq., PHELPS DUNBAR LLP, john.mullen@phelps.com; Blake R. Bailey, Esq., blake.bailey@phelps.com, 100 South Ashley Drive, Suite 2000, Tampa, FL 33601-1288, on this 22nd day of May, 2020.

*/s/ Jeffrey W. Gibson*
**Jeffrey W. Gibson, Esq.**
Florida Bar Number: 568074