UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINCARE, INC.,

    Plaintiff,

vs.

                                              Case No: 8:20-cv-01002-WFJ-AAS

ESTHER D. TINKLENBERG

    Defendant.

_____/

### DEFENDANT ESTHER D. TINKLENBERG'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendant, ESTHER D. TINKLENBERG ("Ms. Tinklenberg"), by and through her undersigned counsel, files this memorandum in opposition to *Plaintiff's Motion for Preliminary Injunction* (D.E. 9), and states as follows:

**I.    INTRODUCTION**

While Ms. Tinklenberg disputes the enforceability of the non-compete provisions of the Key Employee Agreement on several grounds, the Court need only analyze the very first prong of the preliminary injunction framework to determine the motion must be denied. Plaintiff cannot possibly establish a likelihood of success on the merits of Ms. Tinklenberg's eighth affirmative defense because it has failed to offer any rebuttal to her proffered evidence and, moreover, has affirmatively blocked access to any documents relevant to the asserted defense.

Additionally, Plaintiff has failed to establish its *prima facie* case that the sweeping restrictions in the non-compete agreement are reasonably necessary to protect legitimate business interests.

1

## II. LEGAL STANDARDS

"The preliminary injunction is an 'extraordinary and drastic remedy' that should only be granted where the movant carries the burden of persuasion as to the following four prerequisites: (1) substantial likelihood of success on the merits, (2) that there is a substantial threat plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to the plaintiff outweighs the threatened harm the injunction may cause to the defendant, and (4) that granting the preliminary injunction will not be adverse to the public interest." *North American Products Corp. v. Moore*, 196 F. Supp. 2d 1217, 1223 (M.D. Fla. 2002).

To meet its burden on the first element, "plaintiff must demonstrate likelihood of success on the merits as to asserted affirmative defenses as well as...elements of plaintiff's prima facie case." *Bradley v. Health Coalition, Inc.*, 687 So. 2d 329, 333 (Fla. 3d DCA 1997) (citations omitted). Under long-standing Florida law, an employer's prior breach of the employment agreement by failing to pay all compensation due is an affirmative defense to the imposition of a temporary injunction enforcing a covenant not to compete because the breaching party has no standing in equity. *See id.* (reversing temporary injunction because trial court declined to consider employee's defense that the employer had breached the agreement). *See also North American Products Corp.,* 196 F. Supp. 2d at 1224 (M.D. Fla. 2002); *Northern Trust Investments, N.A. v. Domino,* 896 So. 2d 880, 882 (Fla. 4th DCA 2005) (employer "did not show a substantial likelihood of success on the merits because it did not dispel" employee's claim that the company breached the employment contract).

Enforcement of contracts that restrict competition is governed by Florida Statute 542.335, which provides that restrictive covenants are not prohibited "so long as such contracts are reasonable in time, area, and line of business." § 542.335(1), Fla. Stat. Ann. The law places the

burden squarely on Plaintiff to "prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction." § 542.335(1)(c), Fla. Stat. Ann. Further, the court must "consider all other pertinent legal and equitable defenses." § 542.335(g), Fla. Stat. Ann.

III. ARGUMENT

    **a. Plaintiff has failed to establish likelihood of success on the merits.**

        **i. Plaintiff breached the employment agreement by failing to pay compensation owed to Defendant, and therefore lacks standing in equity to seek injuntive relief.**

"Under Florida law where the employer has materially breached an employment agreement by failing to pay the discharged employee compensation owed under the employment contract, the employee is relieved of any further obligation under the contract and the employer cannot obtain an injunction." *North American Products Corp.,* 196 F. Supp. 2d at 1224 (M.D. Fla. 2002); *see also United Subcontractors, Inc. v. Godwin*, 11-81329-CIV, 2012 WL 1593173, at *5 (S.D. Fla. Feb. 3, 2012); *Northern Trust Investments, N.A.,* 896 So. 2d at 882 (Fla. 4th DCA 2005); *Supinski v. Omni Healthcare, P.A.*, 853 So.2d 526, 532 (Fla. 5th DCA 2003); *Benemerito & Flores, M.D.'s, P.A. v. Roche*, 751 So. 2d 91, 93 (Fla. 4th DCA 1999); *Bradley,* 687 So. 2d at 333 (Fla. 3d DCA 1997); *Cordis Corp. v. Prooslin*, 482 So. 2d 486 (Fla. 3d DCA 1986). This longstanding rule is firmly rooted in Florida law and is derived from the fundamental principle that "a party is not entitled to enjoin the breach of a contract by another, unless he himself has performed what the contract requires of him; if he himself is in default…, he has no standing in equity." *Seaboard Oil Co. v. Donovan,* 99 Fla. 1296, 1305 (1930) (affirming denial of temporary injunction).

Plaintiff has wrongfully refused to pay Ms. Tinklenberg significant compensation to which she is entitled. Throughout Ms. Tinklenberg's employment, her compensation at Lincare, Inc. was a combination of base salary and quarterly bonuses. *Affidavit of Esther D. Tinklenberg* (D.E. 38-1) (hereinafter "*Def. Aff.*") ¶ 4; *see also Verified Complaint* (D.E. 1) ¶19. Lincare's salaries are lower than industry average, but Ms. Tinklenberg considered the overall compensation competitive because the bonus structure was advantageous and predictable. *Def. Aff.* ¶ 4. Each time she received salary increases throughout her tenure at Lincare, the discussion included assurances that the bonus structure would remain the same. *Id.*

The bonus calculation remained the same throughout Ms. Tinklenberg's employment. *Id.* at ¶ 5. In the first quarter of each year, Lincare set a threshold based on the strongest quarter of the previous year, and quarterly bonuses were calculated using a formula of a certain percentage of the amount greater than the threshold of EBITDA (earnings before interest, taxes, depreciation and amortization) plus bad debt. *Id.* Since becoming a regional manager in 2013, Ms. Tinklenberg's quarterly bonuses were 4% of the amount greater than the threshold of EBITDA plus bad debt. *Id.*

Based on reports provided each month by Plaintiff, Ms. Tinklenberg has always been able to accurately calculate and predict the amount of the quarterly bonuses she would receive. *Id.* at ¶ 6. The profit and loss report ("P&L") provided to Ms. Tinklenberg by Plaintiff for months in which she was paid a bonus always accurately reflected the amount of bonus she received. *Id.* at ¶ 10. Based on the reports and information provided to Ms. Tinklenberg, she expected to receive a bonus of approximately $78,000 to $80,000 for the second quarter of 2019. *Id.* at ¶ 7. In fact, Plaintiff paid her only $44,373.07. *Id.* at ¶ 9. When Ms. Tinklenberg

4

questioned her supervisor why her bonus was so much lower than expected, she was only told that "no one gets bonuses that big anymore." *Id.*

During Ms. Tinklenberg's employment, for every month in which quarterly bonuses were paid prior to December 2019, the P&L for that month always reflected the precise amount of Ms. Tinklenberg's bonus as an expense. *Id.* at ¶ 10. When she received her P&L report for December 2019, it showed an expense for a bonus of $78,000, which reflected the amount she had expected to receive but was $33,626.93 more than she actually received. *Id.* Consequently, while Lincare failed to appropriately pay Ms. Tinklenberg the compensation to which she was entitled, it nevertheless charged her P&L for the very bonus amount she earned and was expecting. Further, by charging her division for this greater amount, her division's profit was therefore reduced for the calculation of her fourth quarter bonus, even though she was never actually paid that compensation. *Id.*

Lincare's failure to pay Ms. Tinklenberg the full compensation to which she was entitled continued into the next quarter. While she expected a bonus for the third quarter of 2019 in approximately the same amount of $78,000, Plaintiff paid her only $50,085.37. *Id.* at ¶ 11. Despite remaining employed with Plaintiff until after the end of the first quarter of 2020, Ms. Tinklenberg was never paid the bonus she earned for the fourth quarter of 2019, which again should have been $75,000 to $80,000. *Id.* at ¶ 12.

In all its filings subsequent to the complaint and in its discovery responses, Plaintiff has refused to address the issue of Ms. Tinklenberg's bonus structure and compensation and refers only to the lump-sum payment it made in 2013 in connection with the signing of the Key Employee Agreement containing the non-compete provision. In the complaint, however, Plaintiff specifically acknowledged that the lump-sum payment was "[i]n addition to continuing to pay

Tinklenberg's substantial salary and bonus compensation during her continued employment" Complaint ¶19. As Plaintiff reveals in this allegation, the Key Employee Agreement was only one part of the overall employment agreement between Ms. Tinklenberg and Plaintiff. Plaintiff's failure to pay Ms. Tinklenberg more than $200,000 in compensation to which she is entitled is a material breach of their employment agreement.

"A party cannot enforce obligations under one contract without performing obligations under other, interdependent contracts." *Murphy v. Chitty*, 739 So. 2d 697, 698 (Fla. 5th DCA 1999). In *Cordis Corp. v. Prooslin,* the employer attempted to enforce a non-compete agreement executed when the employee was hired while refusing to pay compensation negotiated four years subsequent to his hiring and separately documented with no reference to the non-compete agreement. *Cordis Corp. v. Prooslin*, 482 So. 2d 486 (Fla. 3d DCA 1986). The court upheld the trial court's reliance on the employer's failure to pay this subsequently promised compensation as a material breach of the employment agreement in declining to enforce the terms of the separately executed restrictive covenant because the employer had no standing in equity. *Id.* at 490.

Ms. Tinklenberg asserted in her Eight Affirmative Defense that:

> Counts I, II, and III of Plaintiff's Complaint are barred and fail to state a claim upon which relief can be granted to the extent that Plaintiff failed to fully perform its obligations pursuant to Defendant's [employment], which relieved Defendant from any obligation to perform under the Non-Compete. For example, Plaintiff failed to properly and fully compensate Defendant pursuant to the terms of her employment.

*Defendant's Answer and Affirmative Defenses* (D.E. 25) at 18 (omitted word added to correct scrivener's error). Ms. Tinklenberg has proffered evidence that Plaintiff materially breached the employment agreement by not paying her the bonuses she was owed. "Once the defendant

employee brings forth evidence of the plaintiff employer's material breach of the employment contract, the burden is on the plaintiff employer 'to demonstrate the likelihood of success on the merits as to this issue.'" *Bradley,* 687 So. 2d at 333 (quoting *Cordis Corp.*, 482 So.2d at 490). Plaintiff has not only failed to proffer any evidence to dispel Ms. Tinklenberg's defense, Plaintiff has expressly refused to provide related discovery, preventing Ms. Tinklenberg from further documenting her claim at the preliminary injunction stage. *Def. Motion to Compel Supplemental Responses and Production of Documents* (D.E. 29) pp. 2-7; *Pl. Response in Opposition to Def. Motion to Compel Supplemental Responses and Production of Documents* (D.E. 32), pp. 3-4 ("The amount of Tinklenberg's quarterly bonuses and the factors considered in arriving at those bonus payments are not relevant to whether she received the consideration specifically provided for in the agreement."). Lincare cannot simply ignore this inconvenient fact while still seeking a career-altering injunction against Ms. Tinklenberg.

Plaintiff has no standing in equity to obtain an injunction, and Ms. Tinklenberg is relieved of any further obligation under the non-compete agreement. *See Northern Trust Investments, N.A.,* at 882 (upholding denial of temporary injunction because employer's failure to fully pay bonuses was a material breach of the contract, and employer therefore did not show a substantial likelihood of success on the merits).

Further, the court in *Cordis* noted that "in the event [the employer] prevails after a full trial on the merits, the trial judge is empowered to extend the restrictive periods beyond the times specified in the Fair Competition Agreement in order to insure [the employer] receives the full benefit of the restrictions. The availability of this remedy provides further support for our conclusion that the trial court did not err in partially denying [the employer]'s motion for temporary injunction." *Cordis* 482 So. 2d at 491, fn 3. Likewise, in the instant case, the Key

Employment Agreement provides "the Restriction Period will not expire, and will be tolled, during any period in which the Employee is in violation of any restrictions." *Pl. Motion for Preliminary Injunction*, Ex. 1 at 4. Thus, should Plaintiff prevail at trial after discovery is complete and all relevant evidence can be considered, Plaintiff would still receive the full benefit of its bargain.

> ii. **Plaintiff has failed to prove the restrictions are reasonably necessary to protect the alleged legitimate business interests.**

Even if Plaintiff had standing in equity, the restrictions sought are overbroad as to area and line of business, and Plaintiff has failed to meet its statutory burden to establish they are reasonably necessary to protect their alleged legitimate business interests. § 542.335(1), Fla. Stat. Ann. Plaintiff has requested the court enter an order enjoining Ms. Tinklenberg from working for any company engaged in *any line of business similar* to those engaged in by *any* of the Lincare Entities *anywhere in the United States*. Plaintiff claims the covenant is "narrowly tailored…to be 'reasonable in time [and] area' in that Tinklenberg is restricted from engaging in competitive business activites…only in the 'state or states in which [Tinklenberg] had…responsiblities…,' which in her case were nationwide responsbilities." *Pl. Motion for Preliminary Injunction* at 9. The bare assertion that this broad geographic restriction is "eminently reasonable" is insufficient to establish it is necessary to protect Plaintiff's legitimate business interests.

Plaintiff asserts Ms. Tinklenberg had nationwide responsibility and seeks to enjoin her from working anywhere in the United States. Plaintiff further asserts that Ms. Tinklenberg's new employer, Thrive Skilled Pediatric Care LLC, "competes with Lincare in *several states*." *Pl. Motion for Preliminary Injunction* at 6 (emphasis added). But Plaintiff not only has failed to present any details or evidence as to which specific states or regions in which it currently provides pediatric services, what pediatric services it provides, and to what patient population,

and in fact has refused to provide discovery on these issues. To prohibit Ms. Tinklenberg from working anywhere in the United States when Plaintiff admittedly only currently competes with her new employer in "several states" is on its face not a restriction "reasonable…in area," as required by the relevant statute, and Plaintiff has failed to meet its statutory burden to support such a restriction.

Likewise, Plaintiff claims "Thrive also engages in the business of providing pediatric vents and durable medical equipment, the same as Lincare." *Id*. Ms. Tinklenberg avers, based on knowledge acquired in her position as head of Plaintiff's enteral division, that Plaintiff no longer substantially engages in providing medical equipment for the high-tech, medically fragile pediatric patients, including pediatric vents, in which Thrive specializes. *Def. Aff.* ¶ 13. In fact, during Ms. Tinklenberg's final four years, Plaintiff often refused to serve patients in that population. *Id.* Plaintiff has refused to provide discovery on this issue and has offered no evidence that they in fact compete in this line of business.

Further, Thrive is a significantly smaller company with much less market share or purchasing power. *Id* at 14. Any information Ms. Tinklenberg received related to Lincare's pricing, costs, and expenses would be irrelevant to Thrive's business. *Id.*

Thus, Plaintiff has failed to meet its burden to establish that the extraordinarily restrictive terms of the non-compete agreement are reasonably necessary to protect its legitimate business interests, and the Court should find it has not demonstrated a likelihood of success on the merits.

Wherefore, for the reasons stated above, Ms. Tinklenberg respectfully requests the Plaintiff's motion for preliminary injunction be denied.

Dated this 19th day of June, 2020.

/s/ Jeffrey W. Gibson
**Jeffrey W. Gibson, Esq.**
Florida Bar Number: 568074
**Thomas R. Farrior, Esq.**
Florida Bar Number: 111965
Primary email:   jg@macfar.com
                 trf@macfar.com
Secondary email: ala@macfar.com
                 gmt@macfar.com

**MACFARLANE FERGUSON & MCMULLEN**
One Tampa City Center
Suite 2000
201 North Franklin Street
Tampa, FL 33602
Telephone:   (813) 273-4200
Facsimile:   (813) 273-4396
Attorneys for Defendant, Esther D. Tinklenberg

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically with the Clerk of Court by using the *CM/ECF* system and via email to John D. Mullen, Esq., PHELPS DUNBAR LLP, john.mullen@phelps.com; Blake R. Bailey, Esq., blake.bailey@phelps.com, 100 South Ashley Drive, Suite 2000, Tampa, FL 33601-1288, on this 19th day of June, 2020.

/s/ Jeffrey W. Gibson
**Jeffrey W. Gibson, Esq.**
Florida Bar Number 0568074